UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTUAN VALENTINO LITTLE,

            Plaintiff,

v.                                                       Case No. 17-cv-290-pp

THOMAS GENS,
ROBERT HUMPHREY,
CAPTAIN BERG, and
CAPTAIN CAMPBELL,

            Defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1)

On February 28, 2017, the plaintiff filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. Dkt. No. 1. The plaintiff also filed a motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. This decision resolves the plaintiff's motion and screens his complaint.

I. **Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b).

On March 3, 2017, U.S. Magistrate Judge Nancy Joseph (the judge assigned to the case at that time) ordered the plaintiff to pay an initial partial filing fee of $1.45. Dkt. No. 5. On March 7, 2017, the clerk's office reassigned the case to this court. On May 15, 2017, the court received from the plaintiff the initial partial filing fee. Accordingly, the court will grant the plaintiff's motion to proceed without prepayment of the filing fee, and will require him to pay the remainder of the filing fee over time as explained at the end of this decision.

## II. Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous, malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States;

and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. The Plaintiff's Allegations

During the relevant period, the plaintiff was an inmate at Kettle Moraine Correctional Institution; he worked as a first shift unit 6 bathroom worker. Dkt. No. 1 at 2-3. The defendants all were employees of the Wisconsin Department of Corrections and worked at Kettle Moraine. Id.

On April 4, 2015, defendant Sgt. Gens was the third shift sergeant working on unit 6. Id. at 3. At approximately 5:50 a.m., the plaintiff, who is Muslim, headed to the unit 6 bathroom to perform Wudū. Id. at 3. Wudū is a purification ritual performed before prayer; it is practiced by Muslims and is a recognized religious practice at Kettle Moraine. Id.

The Kettle Moraine handbook states, "after dayroom closes at night until 6:00 a.m., the bathroom will be open for toilet and/or urinal use only. Sinks may be used for hand washing only. All other personal hygiene must be completed prior to the dayroom closing. Exceptions will be made for early work duty or religious reasons." Id.

As the plaintiff got to the bathroom door, Gens asked him why he was using the bathroom before 6:00 a.m. Id. The plaintiff gave two reasons: he

3

needed to perform Wudū and he needed to get ready for work. Id. Gens told the plaintiff that he was too late to perform Wudū; he said that the plaintiff would need to get up before Fajr[1] prayer, which started at 5:06 a.m., to perform Wudū. Id. at 4. He also told the plaintiff that "bathroom work duty is not early morning work duty." Id.

The plaintiff responded by explaining to Gen the KMCI policy allowing an inmate to use a bathroom prior to 6:00 a.m. for work duty or religious reasons. Id. He also showed Gens an inmate complaint examiner ("ICE") report that he had received in response to an inmate complaint the plaintiff had filed in 2013. Id. The ICE report affirmed that Muslims were allowed to get up up to thirty minutes before sunrise to perform Wudū. Id. The plaintiff asserts that sunrise was at 6:28 a.m. on April 4, 2015, so he had until 5:58 a.m. to perform Wudū. Id.

Gens ordered the plaintiff to return to his cell. Id. Because Muslims are required to perform Wudū prayer, the plaintiff went into the unit 6 bathroom to do so. Id. When the plaintiff came out of the bathroom, Gens told the him that Gens had written the plaintiff an adult conduct report for disobeying orders and disruptive conduct. Id. Gens asked if the plaintiff wanted to take a summary disposition of losing five days of common area privileges; the plaintiff refused, and asked to see a supervisor (informally known as a white shirt). Id. The plaintiff believed that Gens had written him a conduct report to harass him and to retaliate against him for practicing his religion. Id. The plaintiff was not

---

[1] The Fajr prayer is the dawn prayer of the five daily prayers.

4

given the opportunity to speak with a white shirt, but he was allowed to make a brief statement to be written up by another sergeant. Id. The plaintiff again provided the information from the ICE report, as well as the ICE report number so that the hearing officer could find it, and could review the policy. Id.

On April 4, 2015, defendant Captain Berg[2] was the hearing officer who reviewed the plaintiff's conduct report. Id. Berg found the plaintiff guilty of disobeying orders and disruptive conduct. Id. at 5. Berg issued the plaintiff a disposition of five days of loss of common area privileges. Id.

The plaintiff asserts that from April 4 through April 13, 2015, he tried to resolve the issue with Captains Berg, Hoffman, Campbell and Lieutenant Nelson. Id. The captains told the plaintiff they would get back to him on the issue, and Nelson told him, "Give me some time and I'll handle it." Id. During that same time, the plaintiff continued to perform Wudū; he states that no other staff members interfered with his attempts to do so. Id. (It is unclear whether during that time the plaintiff attempted to perform Wudū before or after Fjar prayer.)

On April 13, 2015, Gens again was working unit 6. Id. At approximately 4:51 a.m., the plaintiff approached the unit bathroom to perform Wudū; Gens tried to stop him. Id. Gens told the plaintiff he was too late to perform Wudū; he reiterated that the plaintiff needed to get up before Fjar prayer to perform Wudū (the plaintiff asserts that on that date Fjar prayer started at 4:50 a.m.). Id. The plaintiff told Gens that he had up until thirty minutes before sunrise to

---
[2] The plaintiff identifies Captain Berg as John Doe #1 in the caption of his complaint. It appears he did so because he did not know Berg's first name.

5

get up; then, as he had before, he proceeded to the bathroom to perform Wudū. Id. When the plaintiff came out, Gens gave the plaintiff another conduct report for disobeying orders. Id. This time, he asked if the plaintiff wanted to take a summary disposition of seven days' loss of common area privileges; the plaintiff declined, and asked Gens to call a white shirt. Id. The plaintiff says, however, that there was no white shirt available to speak with him. Id. That same day, defendant Captain Campbell[3] found the plaintiff guilty of disobeying orders and gave him a disposition of seven days loss of common area. Id.

On April 13, 2015, the plaintiff appealed the first conduct report to defendant Warden Robert Humphrey. Id. at 6. On April 14, 2015, he appealed the second conduct report. Id. On April 20, 2015, the plaintiff filed a complaint about Gens's conduct. Id. The complaint examiner rejected the plaintiff's complaint as premature, noting that the plaintiff had not identified any procedural errors. Id. The plaintiff appealed the rejection to Humphrey on April 30, 2015. Id. at 7. Humphrey affirmed the rejection on April 30, 2015, and affirmed the findings of guilt on the conduct reports on May 31, 2015. Id.

### B. The Court's Analysis

Only prison officials who are personally responsible for a constitutional violation can be held liable under §1983. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). The person whom the plaintiff alleges directly violated

---
[3] The plaintiff identifies Captain Campbell as John Doe #2 in the caption of his complaint. It appears he did so because he did not know Campbell's first name.

6

his constitutional rights is Gens. He says that Gens is the one who told him he was too late to perform Wudū, and Gens is the one who issued conduct reports against him when the plaintiff went ahead into the bathroom and performed his ritual wash anyway. Prisoners retain the right to freely exercise their religion, although the right is not unlimited. Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009) (citations omitted). A prison official may restrict an inmate's "ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest." Id. (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). "Legitimate penological interests include security and economic concerns." Id. (citing Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991)).

The plaintiff has alleged that Gens punished him for exercising his right to perform Wudū. Taking his allegations as true (which the court must at the screening stage), Gens appears to have had no legitimate penological interest for doing so. Even though the KMCI handbook made an exception to the bathroom hours for religious purposes, Gens told the plaintiff twice that he couldn't use the restroom to perform Wudū unless he did so before Fjar prayers. These allegations are sufficient to allow the plaintiff to proceed on a First Amendment free exercise claim against Gens.

It is not clear from the plaintiff's allegations whether Gens required the plaintiff to perform Wudū prior to Fjar prayer because there was an institution policy to that effect, or whether Gens imposed this requirement on his own. At this early stage, the court will allow the plaintiff to proceed against Gens in both his individual and official capacities. See Hill v. Shelander, 924 F.2d

7

1370, 1372 (7th Cir. 1991) (explaining that an official capacity suit is appropriate when a defendant is executing or implementing the official policy of the government entity).

The court will not, however, allow the plaintiff to proceed on a First Amendment retaliation claim against Gens. To establish a claim of retaliation, the plaintiff must allege facts indicating that he engaged in a protected activity, that he suffered a deprivation likely to prevent future protected activities, and that there was a causal connection between the two. See Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). The Seventh Circuit Court of Appeals has explained that "even if a defendant was 'brimming over with unconstitutional wrath' against a §1983 plaintiff, that plaintiff cannot prevail unless he or she establishes that the challenged action would not have occurred 'but for' the constitutionally protected conduct." Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002) (citing Button v. Harden, 814 F.2d 382, 383 (7th Cir.1987)).

The plaintiff alleges that Gens gave him a direct order to return to his cell, and admits that he refused to comply with the order and instead proceeded to the bathroom to perform Wudū. Even under the plaintiff's own version of the facts, Gens wrote the plaintiff a conduct report for disobeying his orders, not for practicing his religion. Given that the plaintiff admits he disobeyed a direct order from Gens to return to his cell, he cannot establish that the *only* reason Gens wrote the conduct report was because the plaintiff was practicing his religion.

Nor will the court allow the plaintiff to proceed on an Eighth Amendment claim against Gens. The Eighth Amendment does not protect inmates from punishment—it protects them from *cruel and unusual punishment.* The Supreme Court has found that punishment is "cruel and unusual" when it "involve[s] the unnecessary and wanton infliction of pain," Rhodes v. Chapman, 452 U.S. 337, 345 (1981) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)), or when the punishments are "grossly disproportionate to the severity of the crime," id. (citing Coker v. Georgia, 422 U.S. 584, 592 (1977). The plaintiff concedes that he twice disobeyed Gens' instructions that he could not use the restroom to perform Wudū, and the punishment he received was the loss of his common area privileges for a total of twelve days for the two violations. Even viewing the facts in the light most favorable to the plaintiff, no court would construe that punishment as cruel or unusual under the applicable case law from the Supreme Court and the Seventh Circuit.

This leaves the plaintiff's claims against Humphrey, Berg and Campbell. The plaintiff alleges that Berg and Campbell, who conducted the hearings on the conduct reports, "had adequate time, information, authority and duty to protect plaintiff," but instead that they supported Gens's "unjust harassment and retaliatory conduct." Dkt. No. 1 at 7. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dept. of Nat. Res., 347 F.3d 1014, 1039 (7th Cir.

9

2003)). The plaintiff does not allege that Berg or Campbell denied him his right to practice his religion—he alleges only that they should have protected him from Gens' actions. ""Public officials do not have a free-floating obligation to put things to rights . . . ." Burks, 555 F.3d at 595. It was not Berg's job, nor Campbell's, to "rescue" the plaintiff from Gens' alleged violations of the plaintiff's right to exercise his religion. It was their job to decide whether the plaintiff, in disobeying Gens' directions, violated institution policy. They did their jobs, and they cannot be held liable under §1983 for doing so.

The plaintiff did not mention the Fourteenth Amendment or the due process clause, but the court notes that he cannot state a claim against Berg or Campbell under that clause, either. The Constitution does not guarantee prisoners a specific outcome in a disciplinary hearing (in other words, the plaintiff cannot use a lawsuit under §1983 as a way of appealing an adverse decision in a disciplinary hearing); instead, it guarantees prisoners certain procedural protections when state action implicates a constitutionally protected interest in life, liberty, or property. Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005). The first step in determining whether a prisoner is entitled to those procedural protections is to evaluate whether a state actor has interfered with a protected liberty interest. Id.

Here, the plaintiff received only five and seven days of loss of common area privileges. This relatively minor loss of privileges does not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (quoting Sandin v. Conner, 515 U.S. 472, 486

(1995)). As a result, the plaintiff was not entitled to the procedural protections of the Due Process Clause. And even though he wasn't entitled to them, it appears that he received those procedural protections—he had hearings before the sanctions were issued. The plaintiff has not stated a claim against Berg or Campbell under the Fourteenth Amendment.

Nor will the court allow the plaintiff to proceed against Berg and Campbell under the Eighth Amendment. Again, the plaintiff has presented no evidence that the loss of common area privileges for twelve days constituted the unnecessary and wanton infliction of pain, or that it was grossly disproportionate to the conduct violation.

The court will dismiss Berg and Campbell as defendants.

Finally, the court will not allow the plaintiff to proceed on First, Eighth or Fourteenth Amendment claims against Warden Humphrey, for the same reasons it provided above for Berg and Campbell. The plaintiff alleges only that Humphrey affirmed Berg's and Campbell's decisions. The plaintiff's allegations against Humphrey are even further removed from the actual alleged constitutional violations than his allegations against Berg and Campbell.

Nor can Humphrey be held liable for any supervisory authority he had over Gens, Berg and Campbell. In order for a supervisor to be liable for violating someone's constitutional rights under §1983, that supervisor must be "personally responsible for the deprivation of the constitutional right." Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). To show that a

11

supervisor was "personally responsible" for depriving the plaintiff of the constitutional right, the plaintiff must show that the supervisor "[knew] about the conduct and facilitat[ed] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [the supervisor] might see." Id. (quoting Jones v. City of Chi., 856 F.2d 985, 992-93 (7th Cir. 1988)).

The plaintiff's allegations against Humphrey are insufficient to state a claim against Humphrey, because they do not indicate that Humphrey was directly involved in or responsible for the alleged denial of the plaintiff's First Amendment rights. The court will dismiss Humphrey as a defendant.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** Robert Humphrey, Captain Berg (John Doe #1), and Captain Campbell (John Doe #2) as defendants.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on defendant Thomas Gens.

The court **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendant Thomas Gens shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the prisoner shall collect from his institution trust account the $348.55 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the inmate is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[4] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

---

[4] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court imposes, the court may dismiss his case for failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 14th day of May, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**